NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VONAGE HOLDINGS CORP.,

    Plaintiff,

v.

HARTFORD FIRE INSURANCE CO.,

    Defendant.

Civ. No. 11-6187

MEMORANDUM OPINION & ORDER

THOMPSON, U.S.D.J.

    This matter comes before the Court upon Defendant Hartford Fire Insurance Co.'s ("Hartford") Motion to Dismiss for failure to state a claim under FED. R. CIV. P. 12 (b)(6) [docket # 9]. Plaintiff Vonage Holdings Corp. ("Vonage") opposes this Motion [13]. The Court has considered the parties' submissions and has decided this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth below, the Court will deny the Motion.

**I.    BACKGROUND**

    This dispute arises out of an insurance agreement made between Plaintiff and Defendant. In its Complaint, Plaintiff seeks a declaratory judgment as to the parties' respective rights under the insurance contract and as to damages for Hartford's alleged breach of contract. (Compl. ¶ 8) [1].

    Vonage is a telecommunications company that provides voice and messaging services over broadband internet networks. (*Id.* ¶ 1). On November 4, 2009, Vonage discovered that one or more computer hackers located outside of its premises used a computer to fraudulently access Vonage's Gateway Servers for the purpose of transferring the use of those servers to themselves and others. (*Id.* ¶¶ 9–11). This allowed the hacker or hackers to route telephone calls to Cuba

1

through one of Vonage's telecommunications carrier partners, Primus Telecommunications, Inc. ("Primus").  (*Id.* ¶ 16).  Primus billed Vonage for these unauthorized telephone calls.  (*Id.* ¶ 18). During the time that the hacker or hackers transferred use of Vonage's servers, Vonage "lost the ability to use the full capacity of its Gateway Servers, which are capable of handling approximately 2,000 simultaneous calls."  (*Id.* ¶ 17).  Vonage claims that this resulted in a loss of over one million dollars, (*id.* ¶ 19), and that this loss is covered under its insurance policy with Hartford.

The specific contract at issue bears policy number 00 FA 0231650-09.  (*Id.* ¶ 7).  This policy has run from June 15, 2009 to present.  (*Id.* ¶ 20).  It reads in relevant part:

> We [i.e., Hartford] will pay for loss of and loss from damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":
> 1. to a person (other than a "messenger") outside those "premises"; or
> 2. to a place outside those "premises".

(Def.'s Br., Ex. 1, §§ II.E(1)–(2)) [9-4].[1]  Under the terms of this agreement "other property" is defined as "any tangible property other than 'money' or 'securities' that has intrinsic value." (*Id.*, at ¶ VII.M).  The term "premises" is further defined as "the interior of that portion of any building which you occupy in conducting your business."  (*Id.*, at ¶ VII.N).

Vonage describes its gateway server as "a tangible piece of computer equipment, which connects telecommunications networks with cables, fibers and other electronic devices and apparatus, and has intrinsic value to the core call processing aspects of Vonage's business." (Compl. ¶ 12).  These servers "allow for the routing of telephone calls to Vonage's public

---

[1] Although the Court generally does not consider documents outside of the pleadings on a motion to dismiss, consideration of a document that forms the basis of a claim or that is "integral to or explicitly relied upon in the complaint" is appropriate.  *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).  Consideration of the contract itself is therefore appropriate in this case.

switched telephone network partners for the termination of off-network calls." (*Id.* ¶ 13). They are located on Vonage's leased business premises in New York. (*Id.* ¶ 14).

Vonage, through its assignee, Marsh USA Inc. ("Marsh"), submitted a letter to Hartford reporting a claim based on the facts described above. (*Id.* ¶ 25). Hartford, however, denied coverage for this claim. (*Id.* ¶ 27). This suit followed.

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favourable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court should, however, disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the 'facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).

### III.     ANALYSIS

In order to establish a breach of contract under New Jersey law,[2] a plaintiff must prove four elements: (1) the existence of a valid contract with the defendant; (2) that the defendant breached that contract; (3) the damages resulting from that breach; and (4) that plaintiff performed its obligations under the contract. *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). Defendant in this case challenges only the second element in contesting the validity of Plaintiff's Complaint.[3] Two main arguments are presented by Defendant in this pending motion. First, Defendant argues that Plaintiff has not alleged that tangible property directly related to the use of a computer was transferred outside of Plaintiff's premises. Second, Defendant contends that Plaintiff has not alleged that it suffered a "loss of" or "loss from damage to" its tangible property. After reviewing the contentions made in Plaintiff's Complaint, the Court cannot conclude that Vonage has failed to meet its pleading standard. In essence, Defendant asks this Court to interpret the terms of the insurance agreement between the parties to foreclose Plaintiff's theory of its case. The Court believes, however, that the terms of the insurance agreement are ambiguous and that Plaintiff's interpretation is a plausible one.

---

[2] The parties both mention a choice-of-law analysis in briefing this motion. As Defendant readily admits, there is no substantive difference between the laws of New York and New Jersey on the issues presently before the Court. (*See* Def.'s Br. at 14). Therefore, the Court will apply the laws of the State of New Jersey. *See Lebegren v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) (citing *Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc.*, 655 A.2d 483, 484–85 (N.J. Super. Ct. 1995)) ("If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same.").

[3] Although Defendant also argues that Plaintiff did not suffer a "loss" under the contract, this is analytically distinct from arguing that Plaintiff has not pled damages. Vonage has alleged that Hartford did not pay an insurance claim in this case to which they were otherwise entitled. (*See* Compl. ¶ 27). Vonage further alleges that this failure to pay—as distinct from the issue of whether Plaintiff suffered any loss resulting from the alleged actions of computer hackers—resulted in damages to Vonage of over one million dollars. (*See id.* ¶ 19). This is sufficient to satisfy Vonage's pleading standard for the issue of damages. Whether Plaintiff suffered any "loss" as that term is defined under the contract goes directly to the heart of whether Defendant had an obligation to pay, and thus to whether Defendant breached the contract.

At this stage of litigation, the Court must "draw all plausible inferences that favor Plaintiff." *See Levinson Axelrod, P.A. v. Heyburn*, No. 09-5627, 2010 U.S. Dist. LEXIS 43391, at *12 (D.N.J. May 3, 2010). Moreover, "[w]hen interpreting an insurance contract, courts must resolve any ambiguities in the policy 'in favor of the insured in order to give effect to the insured's reasonable expectations.'" *Scottsdale Ins. Co. v. Somerville Fidelco Assocs.*, No. 07-2763, 2010 U.S. Dist. LEXIS 15258, at *8 (D.N.J. Feb. 22, 2010) (quoting *Am. Motorists Ins. Co. v. L-C-A- Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998)). Here, the servers at issue unquestionably meet the definition of "other property" under the insurance contract. (*See* Compl. ¶12). Whether Plaintiff has met the required pleading standard turns instead on the proper reading of the term "transfer of that property." This term, however, is undefined by the insurance policy and the Court believes that this term is ambiguous.

The policy provides, in the relevant part, that Defendant will insure the Plaintiff against losses "following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the 'premises' . . . to a person outside those premises." (Def.'s Br., Ex. 1, §§ II.E(1)–(2)). This plausibly encompasses insurance against the transfer of use of the servers to a person outside Plaintiff's premises. This is especially true when read against the second portion of this provision, which provides that Plaintiff is insured against losses caused by fraudulent computer use that results in "a transfer of that property from inside the 'premises' . . . to a place outside those premises." (*Id.*). Defendant's reading of the insurance contract, which would require the physical transfer of the property to outside the premises for Plaintiff to have a valid claim, would seemingly make subsection II.E(1) of the contract superfluous. This Court must read the insurance agreement as a whole and give effect to all of its parts. Therefore, Plaintiff's reading of the contract in this regard appears plausible.

Next, Defendant contends that Plaintiff has not properly pled that it suffered a "loss of" its property or "loss from damage to" its property. Plaintiff has pled, however, that "[d]uring the time when the use of Vonage's Gateway Servers were transferred to the hacker or hackers, . . . Vonage lost the ability to use the full capacity of its Gateway Servers . . . ." (Compl. ¶ 17). This alleged loss, although only temporary, satisfies Plaintiff's pleading standard under the plain meaning of the contract. At the very least, this (i.e., the alleged loss of use) is a plausible interpretation of what constitutes a loss of property. Defendant further argues that Plaintiff is improperly seeking to recover the charges it incurred from Primus because those charges constitute a debt to a third-party and are therefore not a "direct" loss covered under the policy. (Def.' Br. at 26–27). Defendant relies on *Royal American Group, Inc. v. ITT Harford, N.E.* to argue that contractual liability for the unauthorized long distance charges is not covered property under the computer fraud coverage policy at issue in this case. *See Royal Am. Grp., Inc. v. ITT Hartford*, No. 16246, 1994 WL 14888, at *3 (Ohio Ct. App. Jan. 12, 1994). The *Royal American* court reached this conclusion based on contract language similar to that at issue here. However, this finding was made on a motion for summary judgment and was preceded by the court's observation that "Royal American did not offer any evidence in the trial court showing how the unauthorized long distance charges resulted in a loss of or damage to its rights under those contracts." *Id*. Because Plaintiff has otherwise stated a claim for relief based on the temporary loss of use associated with the hackers' fraudulent activity, a motion to dismiss is an inappropriate vehicle to decide this additional argument.

## IV.    CONCLUSION

This Court cannot say that Plaintiff's interpretation of the insurance contract between the parties is an implausible one. Although Defendant contends that the contract language can have only one interpretation based on its plain reading, the contract terms appear more ambiguous. In

6

order to determine that Defendant's interpretation of the contract is the appropriate one, to the exclusion of Plaintiff's interpretation, the Court would need more information not contained in the pleadings concerning what the parties intended when the contract was formed.  Many of the arguments presented by Defendant are therefore more appropriately decided on a motion for summary judgment.  For this reason and all of those set forth above,

IT IS on this 28th day of March, 2012,

ORDERED that Defendant's Motion to Dismiss [9] is DENIED.

      /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.